Gary A. Wright, pro se
Cynthia M. Wright, pro se
4810 Ridgewest Drive East
Bonney Lake, WA 98391
253-891-1418

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GARY A. WRIGHT, pro se,<br>CYNTHIA M. WRIGHT, pro se<br><br>Plaintiff,<br><br>Vs.<br><br>ACCREDITED HOME LENDERS,<br>QUALITY LOAN SERVICE,<br>FIDELITY NATIONAL TITLE,<br>MORTGAGE ELECTRONIC<br>REGISTRATIONS, INC,<br>JPMC SPECIALTY MORTGAGE LLC,<br><br>Defendants, | COMPLAINT<br>VIOLATION OF TILE 12<br>LACK OF AUTHORITY TO<br>FORECLOSE ON PROPERTY<br><br>Case No. CV11 5000 BHS<br><br>Judge: _____ |

PLAINTIFFS ORIGINAL COMPLAINT

A. PARTIES

1.  Plaintiffs, Gary A. Wright and Cynthia M. Wright, pro se litigants sues Accredited Home Lenders, Quality Loan Service Fidelity National Title, Mortgage Electronic Registrations, Inc. land JPMC Specialty Mortgage, LLC f/k/a WM Specialty Mortgage LLC.

2.  Defendant(s) are separate corporations whose addresses will be supplied on the Certificate of Service.

1

10-CV-05000-CMP

3. The Original lender Accredited Home Lenders has its principal place of business in the State of California. (Plaintiffs have filed for waiver of service to all defendants.)

## B. JURISDICTION

1. The court has jurisdiction over the lawsuit because the action arises under the following:

With respect to actions in **rem** the applicable principle, amply supported by authorities is stated by Benedict as follows:

> *The right to proceed in **rem** is the distinctive remedy of the admiralty and hence administered exclusively by the United States courts in admiralty: no State can confer jurisdiction upon its courts to proceed in rem, nor could Congress give such power to a State, since it would be contrary to the constitutional grant of such power to the Federal Government. The saving clause of the Judiciary Act and of the Judicial Code does not contemplate admiralty in a common law court." 1 Benedict on Admiralty (6th ed.) 38, section 23.*

> The United States Supreme Court, also has held:
> *The fundamental purpose of Art. III, section 2, of the Federal constitution was to preserve adequate harmony and appropriate uniform rules relating to maritime matters and bring them within the control of the Federal Government." Knickerbocker Ice Co. v.*

> Therefore, the district courts shall have exclusive original jurisdiction, exclusive of the Courts of the states of:

> *"(1) ANY CIVIL CASE OF ADMIRALTY or maritime jurisdiction, savings to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C.A. section 1333(1)." SCUDERO v. TODD SHIPYARDS CORP., 63 Wn.2d 46 at 48 [No 36319. En Banc. October 10, 1963.]* (See Exhibit A)

**It would appear, therefore, that the States have NEVER been granted any authority by Congress to precede *IN REM* in a court in this state of Washington. (Exhibit A)**

## C. CONDITIONS PRECEDENT

1. All conditions precedent have **not** been performed or occurred as required by Law:

    a. Accredited Home Lenders, on April 26, 2006 recorded a Deed of Trust under Auditor's File No. 200604260561, in book xxx, Page xxx, records of Pierce County Washington,

2

b. Gary A. Wright and Cynthia M. Wright, hereinafter "Wrights" allege that the following

   Notice of Trustee Sale Assignments is as follows:

PROPERTY:

   Which is subject to that certain Deed of Trust date 4/5/2006 – recorded 4/26/2006, under Auditor's File No. 200604260561, in book xxx, Page xxx, records of Pierce County, Washington, from Gary A Wright and Cynthia M. Wright, Husband and Wife, as Grantor(s), to Fidelity National Title, as Trustee, to secure an obligation in favor of Mortgage, Electronic Registration Systems, Inc., as nominee for Accredited Home Lenders, Inc., a California Corporation a Corporation, as Beneficiary, the beneficial interest in which was assigned to Mortgage Electronic Registration Systems, Inc., As nominee for Accredited Home Lenders, Inc. a California Corporation a Corporation to JPMC Specialty Mortgage LLC f/k/a WM Specialty Mortgage LLC

c. "Wrights" allege the Notice of Foreclosure as follows:

Notice of Foreclosure:

The attached notice of trustee's sale is a consequence of default(s) in the obligation to JPMC Specialty Mortgage LLC f/k/a WM Specialty Mortgage LLC the Beneficiary of you Deed of Trust and owner of the obligation secured thereby.

Deed of Trust shows MERS as

Transfer of Rights in Property

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This security Instrument secures to Lender (i) repayment of the Loan and all renewals extensions and modifications of the Note, (ii) the performance of borrower's covenant and agreements under this security instrument and the Note. For the purpose, borrower irrevocably grants and coveys to Trustee, in trust, with power of sale the following described property.

d. Accredited Home Lenders, Inc. hereinafter "AHL" filed as noted above the Deed of

   without filing the Promissory Note with it nullifying the Deed of Trust in violation of

   Title 12 and (see *Carpenter v. Longan*, 83 U.S. 271 (1872)

3

"The note and mortgage are inseparable; the former as essential, the latter as an incident. **An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity.** {Footnote 3]> All the authorities agree that the debt is the principal [Note] thing and the mortgage [Deed of Trust] an accessory."

e. Wherefore, "AHL" negated their authority to grant power of attorney to make an assignment to Fidelity National Title, as Trustee to secure the obligation to MERS. (See Exhibit B)

f. "AHL" created a condition precedent when they separated the Deed of Trust and the Promissory Note at the recorder's office. This omission makes the Deed of Trust a nullity, and nullifies any foreclosure attempts by JPM Mortgage Specialty LLC, MERS or whoever is the Holder in Due Course of the **original Promissory Note.**

g. JPM Mortgage Specialty, LLC must establish who the real party in interest in pursuant FRCP Rule 17 which they have failed to do.

### D. Count 1 –Breach of Contract

2. "Wrights" allege that "AHL" the original lender is attempting to initiate a fraudulent foreclosure on plaintiff's property without having the power and authority to make any "Assignments of "Successor Trustee" or Assignment of the Deed of Trust" when the Deed of Trust became a nullity when it was recorded at the recorder's office.

### PRAYER

Plaintiff's humbly asks the honorable court to issue relief from the unlawful foreclose on their property by enforcing Motion for Temporary Restraining Order pursuant FRCP Rule 65(b) until the case at bar can be fully litigated.

Relief should be granted to the plaintiffs to prevent irreparable damage financially, emotionally and physically. Plaintiffs allege a great miscarriage of injustice will occur until the facts and law can be established on the court record, with all evidence and all parties subpoenaed for examination.

Relief should also be granted for discovery in order that plaintiffs due process rights will not be violated.

*Reserving the right to amend this complaint*

Date Jan 3 - 2011

Respectfully submitted,

Gary A. Wright

Cynthia M. Wright
4810 Ridge West Drive East
Bonney Lake, WA. 98391

5

## FROM WHENCE COMES THE SUBSTITUTION OF TRUSTEE'S "POWER" – AND WHEN
## LEGAL ENCYCLOPEDIA AND STATUTORY REQUIREMENTS
## FRAUD NULLIFIES DOCUMENTS FILED PRIOR TO THE "CREATION" OF THE POWER

1.   Libellee(s) admit and agree that the word **"power"** means "1. The ability to act or not act. **2.** Dominance, control, or influence over another. **3.** The legal right or authorization to act or not act; the ability conferred on a person by the law to alter, by an act of will, the rights, duties, liabilities, or other legal relations either of that person or another. **4.** A document granting legal authorization. See AUTHORITY. **5.** An authority to affect an estate in land by (1) creating some estate independently of any estate that the holder of the authority possesses, (2) imposing a charge on the estate, or (3) revoking an existing estate. See POWER OF APPOINTMENT. Black's 1189.

2.   Libellee(s) admit and agree that the term **"power of appointment"** means "A power conferred on a donee by will or deed to select and nominate one or more recipients of the donor's estate or income. --- Also termed *enabling power*. Black's 1190.

3.   Libellee(s) admit and agree that the term **"power of sale"** means "A power granted to sell the property that the power relates to." Black's 1190.

4.   Libellee(s) admit and agree that the word **"transfer"** means "1. Any mode of disposing of or parting with an asset, . . **2.** . . . . The four methods of transfer are by indorsement, by delivery, by assignment, and by operation of law. 3. A conveyance of property or title from one person to another." Black's 1503. (emphasis added)

5.   Libellee(s) admit and agree that "A power to dispose of property can be conferred only by an instrument executed with the same formalities as would be necessary for the disposition of the subject matter power. Accordingly, a DEED or WILL IS ORDINARILY REQUISITE to create the power." Legal Encyclopedia, 72 Corpus Juris Secundum (CJS) *Powers* § 3 ¶ 1, p. 140. (emphasis added)

6.   Libellee(s) admit and agree that "In order to grant a general power of appointment, the GRANTOR [Beneficiary] must . . . indicate by whom the power is to be held, and specify the property over which the power is to be exercised . . ." Legal Encyclopedia 72 CJS *Powers* § 3 ¶ 2, p. 140. (emphasis added)

7.   Libellee(s) admit and agree that "A power which is not presently exercisable . . . IS A NULLITY. Where a power is inseparably connected with, or dependent on, other dispositions of or provisions to the subject matter which are invalid or impossible of accomplishment, THE POWER ITSELF FAILS." Legal Encyclopedia, 72 CJS *Powers* § 4  *Validity,* ¶ 1, p. 141. (emphasis added)

8.   Libellee(s) admit and agree that "[W]here the exercise of a power is made dependent on the happening of a future event, THE EFFECTUAL EXERCISE OF THE POWER IS

**SUSPENDED UNTIL THAT EVENT HAPPENS."** Legal Encyclopedia, 72 CJS *Powers* § 5   *Modification, revocation, and suspension,* ¶ 2, p. 141. (emphasis added)

9.   Libellee(s) admit and agree that **"While THE EXERCISE OF A POWER OF APPOINT- MENT relates back TO THE TIME OF THE CREATION OF THE POWER, the appointed interest or estates VEST ONLY FROM THE TIME OF APPOINTMENT."** Legal Encyclopedia 72 CJS *Powers* § 29 *Operation and affect of execution---Of power of       appointment,* ¶ 2, p. 163. (emphasis added)

10.   Libellee(s) admit and agree that "[A]n illegal appointment is not an appointment." Legal Encyclopedia 72 CJS *Powers* § 29 *Operation and effect of execution---Of power of appointment,*  ¶ 3, p. 164.

11.   Libellee(s) admit and agree that, pursuant the rule of law described, and     required by statute, that,   a substitute trustee's power is not exercisable until such time as said trustee has (1) received a  a *"Substitution of Trustee"* document signed by the BENEFICIARY mandated by Utah Code       57-1-22, recorded at the appropriate county recorder's office in which the real property is located     and in substantially the  form described therein; and (2) received a conveyance of property or  title, signed by the beneficiary (*e.g. "Assignment of Deed of Trust"*), recorded at the appropriate       county recorder's office in which the real property is located; until these two events happen, the       substitute trustee has no power to act, for "where the exercise of a power is made       dependent on  the happening of a future event, "the effectual exercise of the power is suspended until that event       happens." The transfer of power is dependent upon these two events having occurred.

12.   Libellee(s) admit and agree, pursuant to **Utah Code 57-1-22,** described below, the substitute      trustee is not vested with power until the beneficiary files for record, under oath, a (1)   *"Substitution of Trustee"* document, and (2) an *"Assignment of Deed of Trust",* executed by the       beneficiary/grantor, and filed for record at the county recorder's office in which the real property       is located.  These two documents are prerequisite to vesting the local substitute trustee with       "power."

13.   Libellee(s) admit and agree that a *"Substitution of Trustee"* document filed for  record by a
       substitute trustee, alleging therein to having been appointed as successor trustee, PRIOR TO   (1) transfer (*e.g. "Substitution of Trustee"* or (2) by conveyance (*e.g. "Assignment of Deed       of Trust"*), each executed by the beneficiary in affidavit form under oath, is: (1) "a   NULLITY. Where a power is inseparably connected with, or dependent on, other       dispositions [*e.g. "Substitution of Trustee," / "Assignment of Deed of Trust"*], and (2) "Where      the exercise of a power is made dependent on the happening of a FUTURE EVENT, the effectual       exercise of the power is suspended until that event happens," means that the *"Substitution of       Trustee"* document, filed by the substitute trustee alleging his/her appointment as substitute       trustee is: (1) a fraudulent filing, based on fraud, and (2) that any/all documents filed for record           PRIOR TO the above described beneficiary documents, are based on fraud and fraudulent       misrepresentations, punishable by law.

14.   The Libellee(s) admit and agree that any "Assignee" claiming to having been appointed as an          "Assignee" must produce "transfer" document(s) as follows, to wit:

(1) *"Corporate Resolution,"* signed by a majority of the corporate officers; and

(2) *"Power of Attorney"*, each document signed by persons in authority, written on a corporation letterhead, authenticated, and dated prior to the date said assignment was allegedly made, and that no "assignment" shall be accepted without production of these documents.

### A.
### FIRST REQUIREMENT
### FOR VESTING SUBSTITUTE TRUSTEE WITH "POWER"
(72 CJS *Powers* § 3; Utah Code 57-1-22. *Appointment by Beneficiary -- Substitution of Trustee*)

15. Libellee(s) admit and agree that "In order to grant a general power of appointment, the grantor must intend to create the power, **indicate by whom the power is to be held, and specify the property over which the power is to be exercised.** Essential components of a valid limited power of appointment are provisions **designating the subject matter, the person or entity authorized to exercise the power**, and provisions describing or permitting the identification of the membership or class of persons intended to constitute donees. Legal Encyclopedia, 72 Corpus Juris Secundum, hereinafter "CJS," *Powers* § 3, p. 140 ¶ 2.

16. Libellee(s) admit and agree that the power of appointment expressed immediately above is also required by statute, to wit: **Utah Code, Title 57 Real Estate, Chapter 1 Conveyances, Section 22 Successor trustees – Appointment by beneficiary --- Effect --- Substitution of Trustee --- Recording --- Form.** This statute is cited in part as follows:

   **57-1-22.**

   (1)(a) The BENEFICIARY may appoint a successor trustee at any time by filing for record in the office of the county recorder of each county in which the trust property or some part of the trust property is situated, a substitution of trustee. (emphasis added)

   (b) The new trustee shall succeed to all the power, duties, authority, and title of the trustee named in the deed of trust and of any successor trustee.

17. Libellee(s) admit and agree that no substitution of trustee "power" is "created" until a *"Substitu- tion of Trustee,"* document, executed and acknowledged by the BENEFICIARY, has been filed for record at the county recorder's office in which county the real property is located. Said docu- ment must be executed and filed PRIOR TO a "Substitution of Trustee" document, authenticated by the local successor trustee.

18. Libellee's admit and agree that claims of a successor trustee made prior to the *"Substitution of Trustee"* document, acknowledged by the BENEFICIARY, has been filed for record at the county recorder's office --- any claim made by a successor trustee, PRIOR TO appointment via a beneficiary's *"Substitution of Trustee"* is a fraudulent misrepresentation based on fraud, with intent to deceive.

19. Libellee(s) admit and agree that the *"Substitution of Trustee"* document, executed and

acknowl- edged by the BENEFICIARY, which document "transfers" "power" to the successor trustee, must be filed PRIOR TO any filings being made by the intended local successor trustee at a county recorder's office, any state statute to the contrary, notwithstanding.

B.
### SECOND REQUIREMENT
### FOR VESTING SUBSTITUTE TRUSTEE WITH "POWER"
(72 CJS *Powers* § 3; Utah Code 57-1-19 *Trust deeds – Definition of terms* Subsections (3)(4); Utah Code, Title 25 *Fraud* § 1 *Estate or interest in real property*)

20. Libellee(s) admit and agree that "A power to dispose of property can be **CONFERRED ONLY BY AN INSTRUMENT** executed with the same formalities as would be necessary for the disposition of the subject matter of the power. **ACCORDINGLY, A DEED OR WILL IS ORDINARILY REQUISITE TO *CREATE* THE POWER.**" Legal Encyclopedia 72 CJS *Powers* § 3, ¶ 1, p. 140.

21. Libellee(s) admit and agree, as stated above, that a trustee has no "power" until it is "created" via an "*Assignment of Deed of Trust*" pursuant Utah Code, Title 57 Real Estate, Chapter 1, Conveyances, Section 19 Trust deeds --- Definitions of terms, stated as follows:

**57-1-19.**
(1) "Beneficiary" means the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or his successor in interest.
(2) "Trustor" means the person conveying real property by a trust deed as security for the performance of an obligation.
(3) "Trust deed" means a deed executed in conformity with Sections **57-1-20 through 57-1-36** and conveying real property to a trustee in trust to secure the performance of an obligation of the trustor or other person named in the deed to a beneficiary.
(4) "Trustee" means a person to whom title to real property is conveyed by trust deed, or his successor in interest.
(5) "Real property" has the same meaning as set forth in Section **57-1-1**.
(6) "Trust property" means the real property conveyed by the trust deed.

22. Libellee(s) admit and agree that **Utah Code, Title 25 Fraud, Chapter 5 Statute of Frauds, Section 1 Estate or interest in real property**, states as follows:

**25-5-1. Estate of interest in real property.**
No estate or interest in real property, . . . nor any trust or power over or concerning real property or in any manner relating thereto, shall be created, granted, assigned, surrendered or declared otherwise than by act or operation of law, OR BY DEED OR CONVEYANCE IN WRITING, subscribed by the party creating, assigning, surrendering or declaring the same or by his lawful agent thereunto AUTHORIZED BY WRITING. (emphasis added)

23. Libellee(s) admit and agree that **Utah Code, Title 25 Fraud, Chapter 5 Statute of**

**Frauds,** **Section 4 Certain agreements void unless written and signed,** state in part, as follows:

### 25-5-4. Certain agreements void unless written and signed:

(c) every agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation.

24. Libellee(s) admit and agree that, pursuant to the citations described immediately above, no substitution of trustee "power" is "transferred" or "created" until an *"Assignment of Deed of Trust,"* or other form of deed or will, acknowledged by the BENEFICIARY, has been filed for record at the county recorder's office in which county the real property is located. Said assignment must be executed and filed PRIOR TO a "Substitution of Trustee" document, authenticated by the local successor trustee.

25. Libellee's admit and agree that claims of a successor trustee made prior to the "Assignment of Deed of Trust" filed for record at the county recorder's office --- is a fraudulent misrepresentation based on fraud, with intent to deceive.

26. Libellee(s) admit and agree that the *"Assignment of Deed of Trust"* document, executed and acknowledged by the BENEFICIARY, which document "transfers" "power" to the successor trustee, must be filed PRIOR TO any filings being made by the intended successor trustee at a county recorder's office, any state statute to the contrary, notwithstanding.

27. Libllee(s) admit and agree that "power" and "power of appointment" does not vest with an intended local substitute trustee until the "transfer" (see definitions in Item 4 hereinabove) by the execution and filing for record by the BENEFICIARY of (1) *"Substitution of Trustee"*, and (2) *"Assignment of Deed of Trust."* These two documents "create" the power.

28. Libellee(s) admit and agree that any/all documents filed at a county recorder office by the intended local substitute trustee alleging "to have been appointed by so and so bank as successor/substitute trustee" PRIOR TO executed documents by the BENEFICIARY (*e.g.* "transfer" documents) of (1) *"Substitution of Trustee"*, and (2) *"Assignment of Deed of Trust"*, are fraudulent documents based upon fraud, because the "power of appointment" does not vest until AFTER the execution and filing for record of the two documents described herein.

## MORTGAGE FORECLOSURE IS A CIVIL IN REM ACTION IN ADMIRALTY
## FOR WHICH A STATE COURT HAS NO JURISDICTION

In rem. Definition:

In rem adj. from the Latin "against or about a thing," referring to a lawsuit or other legal action directed toward property, rather than toward a particular person. Thus, if title to property is the issue, the action is "in rem." The term is important since the location of the property determines which court has jurisdiction, and enforcement of a judgment must be upon the property and does not follow a person. "In rem" is different from "in personam," which is directed toward a particular person. (See: in personam)

*A Law Dictionary, Adapted to the Constitution and Laws of the United States. By John Bouvier. Published 1856.*

*In rem* lawsuits can be brought against the property of debtors in order to collect what is owed, and they are begun for the partition of real property, foreclosure of mortgages, and the enforcement of liens. They may be directed against real or <u>Personal Property</u>. *In rem* actions are permitted only when the court has control of the property or where its authority extends to cover it.

However, a state court has no jurisdiction to proceed "*in rem*", which is a civil proceeding in Admiralty, for which the United States Constitution granted exclusive jurisdiction to the Federal courts. The jurisdiction of a Federal Court of Admiralty is very narrow having been established only by direct grant under the Constitution of the United States. A suit in Admiralty is designed to bring the "RES" before the court for adjudication.

With respect to actions in rem, the applicable principle, amply supported by authorities, is stated by Benedict, as follows:
*The right to proceed in rem is the distinctive remedy of the admiralty and hence administered exclusively by the United States courts in admiralty: no State can confer jurisdiction upon its courts to proceed in rem, nor could Congress give such power to a State, since it would be contrary to the constitutional grant of such power to the Federal Government. The saving clause of the Judiciary Act and of the Judicial Code does not contemplate admiralty in a common law court." 1 Benedict on Admiralty (6th ed.) 38, section 23.*

The United States Supreme Court, also has held:
*The fundamental purpose of Art. III, section 2, of the Federal constitution was to preserve adequate harmony and appropriate uniform rules relating to maritime matters and bring them within the control of the Federal Government." Knickerbocker Ice Co. v. Stewart (1920), 253 U.S. 149, 64 L.Ed. 834, 40 S. Ct. 438, 11 A.L.R. 1145.*

Examination of the authorities leads one to subscribe to the above-quoted views of Benedict. Moreover, the broad language of the opinion in one of these cases, <u>Taylor v. Steamer Columbia</u> (1855), 5 Cal. 268, to the effect that the states have the power to confer admiralty jurisdiction upon their own courts, **was expressly disavowed** in the later California case of <u>Fischer v. Carey</u> (1916), 173 Cal. 185 [159 P. 577, L.R.A. 1917A 1100].

1

The saving clause was never intended as a device whereby litigants could escape the uniform application of the established principles of admiralty law, as contemplated by the constitution. This is indicated by such decisions as *Southern Pac. Co. v. Jensen, 244 U.S. 205, 217, 61 L.Ed. 1086, 37 S. Ct. 524; Chelentis v. Luckenbach, S.S. Co., 247 U.S. 372, 384, 62 L.Ed. 1171, 38 S. Ct. 501; Knickerbocker Ice Co. v. Stewart, supra; and Washington v. W.C. Dawson Co., 264 U.S. 219, 68 L.Ed. 646, 44 S. Ct. 302 (affirming 122 Wash. 572).*

In the Knickerbocker case, supra, it was said, quoting the early case of The Lottawanna, 88 U.S. 558, 22 L. Ed. 654:

> "That we have a maritime law of our own, operative throughout the United States cannot be doubted. . . . One thing, however, is unquestionable; the Constitution must have referred to a system of law coextensive with and operating uniformly in, the whole country. **It certainly could not have been the intention to place the rules and limits of maritime law under the disposal and regulation of the several States**, as that would have defeated the uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the States with each other or with foreign states." (pp. 160-161.)
> [5] We therefore conclude that the courts of this state do not have jurisdiction, concurrent or otherwise, over the particular kind of action stated in appellant's amended complaint.
> The judgment is affirmed.
> MALLERY, HILL, FINLEY, and OLSON, JJ., concur." CLINE v. PRICE, 39 Wn.2d 816, 821, 822, 823 (December 27, 1951.)

Therefore, the district courts shall have exclusive original jurisdiction, exclusive of the courts of the states, of:

> "(1) ANY CIVIL CASE OF ADMIRALTY or maritime jurisdiction, savings to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C.A. section 1333(1)."
> SCUDERO v. TODD SHIPYARDS CORP., 63 Wn.2d 46 at 48 [No 36319. En Banc. October 10, 1963.]

The following quotation from Knapp, Stout and Company vs. McCaffery, 178 Ill. 107, 69 Am. St. Rep. 290 at page 299, well illustrates the distinction between an Admiralty suit and a suit in equity for an accounting:

> "The jurisdiction of the courts of the United States to administer relief by proceeding in rem in Admiralty is unquestionably exclusive. Such proceeding, however, is against the property only. The distinguishing and characteristic feature of such suit is, that the vessel or thing proceeded against is itself seized and impleaded as the defendant, and is judges and sentenced accordingly. It is this dominion of a suit in Admiralty over the vessel or thing itself which gives the title made under its decree validity against all the world. (Citing The Moses Taylor, 4 WALL. 411). No person is a defendant in such a suit. Parties who have real or personal interests determine for themselves whether they will appear and protect their interests. When a sale is made in such a proceeding, it is good against the whole world. No such remedy was sought here. This was a suit against persons. No one would be bound by decree herein except those made parties. A sale, though purporting to be of the property, would really be only a sale of the interests of the defendants therein. A personal decree for the deficiency, if any, might follow. The equitable circumstances before mentioned, growing out of the sale and assignment, a denial of possession, intention to seize the property, the duty of McCaffery to protect it from a rise of the river, and the obstacles to so doing put in his way by the Knapp Company, all furnish ground for equitable cognizance. We cannot hold that because a proceeding against the raft in Admiralty might afford some conflict, therefore a court of equity must keep its hand off, if equitable

2

*circumstances exist which justify its granting relief on well established equitable principles against persons made defendants. Moreover, if the case had any likeness to a suit in rem in Admiralty when it was started, it lost that distinctive character when the Knapp Company at its own request, took the raft and left a personal bond in its place. Thereafter the suit was wholly in personam." Citing Johnson vs. The Chicago Etc. Elevator Company, 119 U.S. 388, Gindele vs. Corrigan, 28 Ill. App. 476, 129 Ill. 582, 16 Am. St. Rep. 292."*

Furthermore, the Washington Supreme Court has disclaimed any jurisdiction over maritime torts. <u>West v. Martin</u>, 47 Wash. 417, 92 Pac. 334.

Also, the case law says that "***IN REM***" proceedings must proceed in Admiralty Jurisdiction which by the Federal Constitution is granted SOLELY to the FEDERAL COURTS EXCLUSIVE OF THE STATES.

Chief Justice Taney stated in delivering the opinion of the court in the case of *The St. Lawrence (1874)*, 1 Black, 526, 527:

> The question is discussed with great felicity and judgment by Chief Justice Taney, delivering the opinion of the court in the case of *The St. Lawrence,* where he says: 'Judicial power, in all cases of admiralty and maritime jurisdiction, is delegated by the Constitution to the Federal government in general terms, and courts of this character had then been established in all commercial and maritime nations, differing, however, materially in different countries in the powers and duties confided to them; the extent of the jurisdiction conferred depending very much upon the character of the government in which they were created; and this circumstance, with the general terms of the grant, rendered it difficult to define the exact limits of its power in the United States. This difficulty was increased by the complex character of our government, where separate and distinct specified powers of sovereignty are exercised by the United States and a State independently of each other within the same territorial limits. And the reports of the decisions of the court will show that the subject has often been before it, and carefully considered, without being able to fix with precision its definite boundaries; but certainly no State law can enlarge it, nor can an act of Congress or rule of court make it broader than the judicial power may determine to be its true limits. And this boundary is to be ascertained by a reasonable and just construction of the words used in the Constitution, taken in connection with the whole instrument, and the purposes for which admiralty and maritime jurisdiction was granted to the Federal government.'

**It would appear, therefore, that the States have NEVER been granted any authority by Congress to precede *IN REM* in a court in this state of Utah.**

3

Notice of Trustee Sale Assignments
Gary and Cynthia Wright

Property
Which is subject to that certain Deed of Trust date 4/5/2006 – recorded 4/26/2006, under Auditor's File No. 200604260561, in book xxx, Page xxx, records of Pierce County, Washington, from Gary A Wright and Cynthia M. Wright, Husband and Wife, as Grantor(s), to Fidelity National Title, as Trustee, to secure an obligation in favor of Mortgage, Electronic Registration Systems, Inc., as nominee for Accredited Home Lenders, Inc., a California Corporation a Corporation, as Beneficiary, the beneficial interest in which was assigned to Mortgage Electronic Registration Systems, Inc., As nominee for Accredited Home Lenders, Inc. a California Corporation a Corporation to JPMC Specialty Mortgage LLC f/k/a WM Specialty Mortgage LLC

Principal sum $377,689,06 with interest provided in the Note from 4/1/2009/
Property to be sold 1/14/2011  default must be cured by 1/3/2011

A written Notice of Default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the address of wrights. On 8/9/2010

Notice of Foreclosure:
 The attached notice of trustee's sale is a consequence of default(s) in the obligation to JPMC Specialty Mortgage LLC f/k/a WM Specialty Mortgage LLC the Beneficiary of you Deed of Trust and owner of the obligation secured thereby.

Deed of Trust shows MERS as
Transfer of Rights in Property
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns)  and the successors and assigns of MERS. This security Instrument secures to Lender (i) repayment of the Loan and all renewals extensions and modifications of the Note, (ii) the performance of borrower's covenant and agreements under this security instrument and the Note. For the purpose,  borrower irrevocably grants and coveys to Trustee, in trust, with power of sale the following described property.